IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LINDIE K.,[1] | Case No. 3:21-cv-01589-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Lindie K. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

///
///
///
///
///
///

PAGE 2 – OPINION AND ORDER

## BACKGROUND

### I. PLAINTIFF'S APPLICATIONS

Plaintiff was born in April 1967, making her fifty years old on November 17, 2017, her amended alleged disability onset date.[2] (Tr. 39, 285.) Plaintiff earned a bachelor's degree in social work and has past relevant work experience as a child development specialist and a loan clerk. (Tr. 28, 39.) In her application, Plaintiff alleged disability due to Crohn's disease,[3] inflammatory eye disease, interstitial cystitis,[4] inflammatory joint disease, migraines, depression, and anxiety. (Tr. 318.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on May 24, 2019, Plaintiff requested a hearing before an ALJ. (Tr. 84, 94, 108, 119, 156.) Plaintiff and a vocational expert ("VE") appeared by telephone and testified at an administrative hearing on July 12, 2021. (Tr. 35-60.) On July 29, 2021, the ALJ issued a written decision denying Plaintiff's applications. (Tr. 15-29.) On September 16, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-4.) Plaintiff now seeks judicial review of the ALJ's decision.

---

[2] Plaintiff originally alleged a disability onset date of May 1, 2015, but amended the onset date after a previous Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits on November 16, 2017. (Tr. 39, 64-78.)

[3] "Crohn's disease is 'a chronic granulomatous inflammatory disease of unknown etiology, involving any part of the gastrointestinal tract from mouth to anus, but commonly involving the terminal ileum with scarring and thickening of the bowel wall; it frequently leads to intestinal obstruction and fistula and abscess formation and has a high rate of recurrence after treatment.'" *Lee v. Astrue*, 695 F. Supp. 2d 1033, 1036 (C.D. Cal. 2010) (quoting *Dorland's Illustrated Medical Dictionary*, 514 (29th ed. 2000)).

[4] Interstitial cystitis "is a chronic inflammatory condition of the bladder in which the bladder develops multiple 'pinpoint' hemorrhages [causing p]atients [to] experience urgency and frequency in urination, as well as pain in the abdominal area." *Daugherty-Rosenbaum v. Life Ins. Co. of N. Am.*, No. CIV 06-800-KI, 2007 WL 273571, at *1 (D. Or. Jan. 24, 2007).

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-29.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 17, 2017, her amended alleged disability onset date.

PAGE 4 – OPINION AND ORDER

(Tr. 18.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "Crohn's disease, irritable bowel syndrome, fibromyalgia, degenerative joint disease and osteoarthritis of the bilateral knees, and carpal tunnel syndrome affecting the right upper extremity[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (Tr. 20.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work subject to these limitations: (1) Plaintiff is limited to lifting or carrying twenty pounds occasionally, ten pounds frequently; (2) Plaintiff is limited to standing or walking for a total of six hours, and sitting for a total of about six hours in an eight-hour workday with normal breaks; (3) Plaintiff can occasionally climb ramps or stairs but no climbing of ladders, ropes, or scaffolds; (4) Plaintiff is limited to frequent stooping, kneeling, crouching, and crawling; (5) Plaintiff is limited to frequent handling and fingering with the dominant upper right extremity; and (6) a bathroom must be on the premises. (Tr. 21.) At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a child development specialist and loan clerk. (Tr. 28.) At step five, the ALJ determined that Plaintiff was not disabled because in addition to her past relevant work, a significant number of jobs existed in the national economy that she could perform, including work as an office helper and mail clerk. (Tr. 28-29.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) improperly discounting Plaintiff's symptom testimony; (2) improperly assessing medical opinion evidence; and (3) failing to include all supported limitations in the RFC. (Pl.'s Br. at 5.) As explained below, the Court concludes that the Commissioner improperly discounted Plaintiff's symptom testimony

and failed to include all of her limitations in the RFC.[5] Therefore, the Court reverses the Commissioner's decision.

I.     PLAINTIFF'S SYMPTOM TESTIMONY

    A.     Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL

---

[5] Because the Court finds the ALJ erred when she improperly discounted Plaintiff's symptom testimony, the Court does not address Plaintiff's argument that the ALJ improperly discounted medical opinion testimony. (*See* Pl.'s Br. at 13-14, arguing that the ALJ erred by (1) "assess[ing] opinions that [were] dated prior to the alleged onset date of November 17, 2017" and (2) discounting the opinion of occupational therapist Trevor Tash.)

2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 22, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"). The ALJ was therefore required to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ failed to meet that standard as applied to Plaintiff's gastrointestinal and urinary symptoms.[6]

The ALJ discounted Plaintiff's allegations of disabling physical symptoms related to her gastrointestinal and urinary symptoms based on a finding that they were inconsistent with the objective medical evidence. (Tr. 22-23.) Despite concluding that Plaintiff's Crohn's disease and irritable bowel syndrome constituted "severe impairments[,]" the ALJ nevertheless determined that "the treatment records suggest her need to use a restroom at such a frequency was for a limited time." (Tr. 18, 22.) The Court disagrees.

---

[6] Plaintiff also argues that the ALJ improperly discounted Plaintiff's symptom testimony based on her activities of daily living because the ALJ's findings are "too vague to be meaningful and failed to show any actual inconsistency between [Plaintiff's] activities and her subjective statements." (Pl.'s Br. at 8-10; Pl.'s Reply at 1-2.) However, because the Court finds the ALJ committed harmful error in discounting Plaintiff's gastrointestinal and urinary symptoms, the Court does not address Plaintiff's assignments of error regarding her other physical limitations.

At the July 12, 2021, hearing, Plaintiff testified that she was "continuing to have to stay next to a toilet [and was] still having diarrhea." (Tr. 45.) Plaintiff reported that she was "work[ing] toward hopefully it getting a little bit better [but t]he doctors and the surgeons state that this would be my new normal[.]" (*Id*.) A medical record from January 28, 2021, indicated that Plaintiff had reported "ten bowel movements a day" and when asked whether that was "still consistent . . . today," Plaintiff responded that "it varies" "but at least ten or more" and stated that on the morning of the hearing, she had "gone four times already since 8 a.m." (Tr. 46-47.) Plaintiff also testified that her urinary incontinence issues "seem[ed] not as severe as it was prior to [] surgery" but would "still have leakage . . . [and] pain off and on," and although it was "not as bad, [] it's still there." (Tr. 47.)

In discounting Plaintiff's testimony, the ALJ summarized Plaintiff's recent medical records related to her gastrointestinal and urinary symptoms and noted that an "endoscopy showed innumerable small polyps, but no findings of active Crohn's disease . . . and a colonoscopy showed innumerable polyps with dysplastic features." (Tr. 23.) The ALJ also noted that Plaintiff underwent a "laparoscopic abdominal colectomy in January 2021" which was followed shortly thereafter by an eight-day hospital stay accompanied by "acute abdominal pain, nausea, and vomiting" resulting from a "small partial bowel obstruction." (*Id*.) The ALJ noted that following surgery, Plaintiff's "pain was improving but still present" and she "felt that she would have an accident if she were not close to a bathroom." (*Id*.) The ALJ also noted that Plaintiff "testified that she . . . ha[s] to stay home because of a lack of access to bathrooms" and that others "assist her with getting to appointments and getting groceries." (Tr. 22.) The ALJ then cited several medical records to support her conclusion that Plaintiff's "bowel symptoms were

only limiting as described during the post-surgical recovery period following the colectomy and brief hospitalization for partial small bowel obstruction in January 2021." (*Id.*)

However, there is not substantial evidence in the record to support the ALJ's conclusion that Plaintiff's symptoms "improved significantly[,]" nor does the objective medical evidence demonstrate that Plaintiff's symptoms were limited only to the period following her colectomy and subsequent hospitalization. For example, on January 28, 2021, Plaintiff reported that she was "having diarrhea, everything she eats/drinks goes through her quickly[, s]he is having roughly 10 [bowel movements] per day, mostly liquid [and although her p]ain is improving, [it is] still very present." (Tr. 1665.) On February 19, 2021, medical records reflect that Plaintiff reported "urinary urgency" that required her to "wear a pad sometimes[, s]he leaks about 1-2 times per day" and her "incontinence symptoms have worsened a lot since her surgery in January [2021]." (Tr. 1801.) That same day, Plaintiff reported that she would have "very soft or liquid" bowel movements "2-3 times per day" and she "d[id] not report loss of stool because she is always close to the bathroom [but f]eels that if she wasn't close to the bathroom she would have an accident." (*Id.*)

Further, the ALJ cited to a record from February 19, 2021, and stated that it demonstrated that Plaintiff "reported some difficulty with urinary incontinence" but the ALJ did not acknowledge the medical examiner's note indicating that Plaintiff's "incontinence has worsened." (Tr. 23, 1806.) Despite the medical examiner's note that Plaintiff was actively seeking management of her urinary incontinence symptoms and would need to "follow up in three months to see how her symptoms are," the ALJ nevertheless concluded that "[t]here is no suggestion that this issue is a lasting problem." (*Id.*) The ALJ cannot ignore record evidence that contradicts her findings. *See generally Adeena W. v. Saul*, No. 6:19-cv-00051-SB, 2020 WL

PAGE 9 – OPINION AND ORDER

2992191, at *5 (D. Or. June 4, 2020) (explaining that an ALJ cannot "cherry-pick" from the record to support their findings while ignoring evidence that contradicts their findings).

For these reasons, the Court finds that the ALJ's decision to discount Plaintiff's symptom testimony regarding her gastrointestinal and urinary symptoms is not supported by substantial evidence in the record.[7]

## II. PLAINTIFF'S RFC

The ALJ determined that Plaintiff was capable of light work subject to several physical limitations and that "[a] bathroom must be on the premises." (Tr. 21.) Plaintiff argues that although the ALJ "acknowledged that [Plaintiff] has ongoing gastrointestinal and urinary symptoms that cause her to need to use the bathroom frequently and urgently," the ALJ's requirement that a bathroom be on the premises "was effectively meaningless" because "[a]ll employers must provide access to bathrooms." (Pl.'s Br. at 16.) The Commissioner responds that the "ALJ acknowledged that [Plaintiff's] Crohn's disease and irritable bowel syndrome constituted severe impairments that limited her to a range of light work with access to a bathroom onsite." (Def.'s Br. at 3.)

### A. Applicable Law

The RFC is the most a person can do, despite her physical or mental impairments. *See* 20 C.F.R. § 404.1545. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and

---

[7] Even if the Court were to conclude that the ALJ properly discounted Plaintiff's symptom testimony based on the objective medical evidence, the ALJ cannot rely on that as the sole reason to discredit Plaintiff's testimony as to the severity of her gastrointestinal and urinary symptoms. *See Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony," and therefore holding that the ALJ failed to provide clear and convincing reasons for discounting the claimant's testimony) (citation omitted).

PAGE 10 – OPINION AND ORDER

other evidence," including the claimant's testimony. *Id.*; *see also* Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

"Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Leroy M. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-0632-HZ, 2019 WL 4276996, at *6 (D. Or. Sept. 10, 2019) (quoting *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016) and citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001)).

### B.   Analysis

Plaintiff argues that the RFC failed to account for the limitations caused by Plaintiff's "ongoing gastrointestinal and urinary symptoms that cause her to need to use the restroom frequently and urgently." (Pl.'s Br. at 16.) The Court agrees.

The ALJ concluded that "the need for the presence of a restroom is supported by the evidence and is included in the residual functional capacity findings[.]" (Tr. 24.) While the ALJ included a limitation that "a bathroom must be on the premises," the ALJ did not address the record evidence or Plaintiff's testimony regarding the frequency or urgency with which she needs to use the restroom. Accordingly, the Court finds that the bathroom limitation in the RFC does not adequately address Plaintiff's need to use the restroom frequently and urgently. *See Allen v. Astrue*, No. 6:11-CV-06322-KI, 2012 WL 4792412, at *11 (D. Or. Oct. 9, 2012) ("Based on [the court's] finding [that] the ALJ failed to specifically address [the claimant's] testimony regarding the frequency with which she needs to use the restroom, and the fact that a limitation

PAGE 11 – OPINION AND ORDER

to access to the restroom does not adequately address the need to use a restroom, [] a reversal and remand for additional evidence or hearing is required."); *see also Stanley R. v. Saul, Comm'r of the Soc. Sec. Admin.*, No. 20-cv-1192, 2021 WL 2550540, at *4 (N.D. Ill. June 22, 2021) (holding it is "error where an ALJ fails to make a finding regarding the required length or frequency of bathroom breaks in cases where that may affect the claimant's ability to maintain full time work" (citing *Sikorski v. Berryhill*, 690 F. App'x 429, 433 (7th Cir. 2017))).

## III.   REMEDY

### A.   Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

PAGE 12 – OPINION AND ORDER

B.  Analysis

The Court finds that Plaintiff has satisfied the credit-as-true standard here. For the reasons stated above, the ALJ failed to provide a legally sufficient basis for rejecting Plaintiff's gastrointestinal and urinary symptom testimony. Furthermore, as discussed below, the record has been fully developed and demonstrates that if the improperly discredited evidence is credited as true, the ALJ would be required to find Plaintiff disabled on remand.

Plaintiff testified that she was able to do "little things" to make money, including dog sitting, because she "could still be in a home [] next to a toilet." (Tr. 55.) Plaintiff also testified that she had issues with previous employment based on the availability of a restroom, that she "would have to stay home to stay close to the bathroom, because there were not enough bathrooms in the [work] facility [and i]f [Plaintiff] needed to go, [she] needed to go[, she] couldn't wait for a bathroom if someone was using it." (Tr. 41.) Despite surgery to remove part of her colon, Plaintiff testified she "continu[ed] to have to stay next to a toilet[.]" (Tr. 45.)

The ALJ determined that, in addition to several exertional limitations, Plaintiff must have a bathroom available on her work premises. (*See* Tr. 21.) In questioning the VE as to whether Plaintiff's limitations would preclude past relevant work, the ALJ's hypothetical did not include any limitations about frequency or urgency of restroom use, only that a bathroom must be present. (Tr. 57.) The VE testified that Plaintiff would be able to perform past relevant work as a child development specialist and a loan clerk. (*See* Tr. 56-57.)

The ALJ then inquired into the "frequency and duration of breaks in competitive employment." (Tr. 58.) More specifically, the ALJ asked the VE whether an employee could take "an additional two to three unscheduled breaks, each break in duration of 15 to 20 minutes[.]" (*Id.*) The VE replied that "an employer would not tolerate that." (*Id.*)

Plaintiff argues that, credited as true, her testimony required an additional limitation in the RFC, including "extra breaks, and a need for ready access to a bathroom (not merely a bathroom on the premises)[.]" (Pl.'s Br. at 2.) As discussed above, substantial evidence supports Plaintiff's need to use the bathroom frequently and urgently, and the ALJ erred by not incorporating that limitation in the RFC. *See, e.g.*, *Sims v. Kijakazi*, No. 4:20-cv-002892-TER, 2021 WL 4026070, at *6 (D.S.C. Sept. 3, 2021) ("[T]he ALJ should make a finding as to the frequency of bathroom breaks and analyze whether the RFC was impacted by a need to take frequent bathroom breaks."); *see also Stanley*, 2021 WL 2550540, at *4 (noting that "the ALJ certainly thought there was at least a question whether [the p]laintiff's need for multiple bathroom breaks could affect his ability to maintain full time work when the ALJ asked the VE whether there was 'any leeway for extra bathroom breaks during the day'"). Further, the record is fully developed because the VE testified that additional breaks to use the bathroom would preclude employment, and therefore further proceedings would serve no useful purpose here. *See Jose R. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-01500-BR, 2022 WL 703715, at *8 (D. Or. Mar. 9, 2022) (reversing the Commissioner's decision and remanding the case for an immediate calculation and award of benefits where the ALJ's RFC had limited Plaintiff only to "ready access to a restroom" despite VE testimony that "an individual who needed to use the restroom three or four times a day for 30 or 45 minutes each time would . . . be precluded from 'all competitive employment'"); *Koch v. Astrue*, No. CV 08-609 PK, 2009 WL 1743680, at *18 (D. Or. June 15, 2009) (reversing the Commissioner's decision and remanding for an immediate award of benefits where "[t]he ALJ . . . merely limited [the plaintiff] to jobs that allowed easy access to a restroom" because "[t]hat limitation fails to account for the frequent and lengthy trips to the restroom that [the plaintiff] described in his testimony").

For these reasons, and because the Court does not have any serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *See Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits" where "[t]he vocational expert concluded that an individual with [the claimant's] limitations, as described in the improperly discredited testimony . . . would be unable to perform competitive employment"); *Koch*, 2009 WL 1743680, at *19 ("[T]he Ninth Circuit has indicated that a court will not remand solely to allow an ALJ to make specific findings regarding a claimant's improperly discredited testimony." (citing *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998))).

## CONCLUSION

Based on these reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for a finding of disability and immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge